Gary BROWN;  Harvey Glazier;  Arthur Hicks;  George Ponton;  and, Alvery D. Williams, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 91–1104.

United States Court of Federal Claims.

July 20, 1994.

Peter D. Durney, Reno, NV, for plaintiffs.

Mathew S. Bode, Washington DC, U.S. Dept. of Justice, Civ. Div., Commercial Litigation Branch with whom was Thomas W. Petersen, Asst. Director, David M. Cohen, Director, and Frank W. Hunger, Asst. Atty. Gen., for defendant.

## OPINION

SMITH, Chief Judge.

The plaintiffs in this case are federal wage grade employees who maintained and drove ambulances for the Indian Health Service, a unit of the Public Health Service of the Department of Health and Human Services (HHS) during the period from June 7, 1979 to June 6, 1985. Plaintiffs brought claims for overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and under the Federal Employees Pay Act (FEPA), 5 U.S.C. § 5541 *et seq.* The government filed a motion for summary judgment, and this court ruled that the Tucker Act's six year statute of limitations barred plaintiffs' FEPA claims before March 12, 1984 and that plaintiffs' FLSA claims were barred entirely by the FLSA's two year statute of limitations. The substance of plaintiffs' surviving claims is that plaintiffs are entitled to overtime pay, under 5 U.S.C. § 5544(a), for time spent off site waiting for hospital calls during the period from March 12, 1984 to June 6, 1985. On February 18, 1994, the government filed a new motion for summary judgment. Plaintiffs filed a motion opposing summary judgment on April 14, 1994, and the government filed a reply on May 24, 1994. For the reasons set forth below, the government's motion must be denied.

## FACTS

During normal business hours, 8:30 AM to 4:00 PM Monday through Friday, plaintiffs Gary Brown, George Ponton, and Alvery Williams were maintenance mechanics at the Indian Health Service Hospital in Schurz, Nevada. Plaintiff Arthur Hicks was a driver, and plaintiff Harvey Glazier was the foreman responsible for supervising the other four plaintiffs. For one night every week, and on every fifth weekend, plaintiffs were required to respond to ambulance and maintenance calls from the hospital. The hospital expected plaintiffs to wear radio beepers and to remain within the beeper system's three-mile range, or, alternatively, to provide the hospital with the telephone number of the place where they could be reached. They were expected to arrive at the hospital for duty in reasonably clean, presentable fashion and were subject to discipline if they failed to respond in a timely manner. There is no allegation that any of the plaintiffs were actually disciplined for late responses.

Plaintiffs contend that they were required to respond to calls within five minutes, and their federal employee performance evaluation forms support this claim. Three of the plaintiffs had a job performance evaluation "critical element" titled "Ambulance and Maintenance Call." *See* Def.'s Motion for S.J. app. at 65–72. Under this critical element the hospital defined plaintiffs' duties to the hospital in terms of the time in which plaintiffs responded to hospital calls. Plaintiffs contend that they were subject to discipline if they did not respond within five minutes in part because these "critical elements" established a five-minute response time as the threshold for acceptable performance. *See* Pl's Opp. to Def.'s Motion for S.J. at 2. The performance evaluation forms also appear to show that plaintiffs could not win the highest rating on their performance evaluations if they did not respond, on average, within two-minutes of hospital calls.

Plaintiffs' supervisors signed forms indicating that each plaintiff had met the five minute requirement until July 6, 1985. It was on this date that hospital administrators altered the "met" and "exceed" thresholds to thirty and fifteen minutes, respectively. According to the allegations in plaintiffs' complaint, the hospital's motive for changing the thresholds was to avoid compensating plaintiffs for standby duty. *See* Pl's Complaint at 5–6.

Notwithstanding the inference that could be drawn from the hospital's alteration of plaintiffs' job requirements to avoid premium pay, the government contends that the required response times are not relevant because plaintiffs' activities were not "substantially restricted," and their homes were never designated as "duty-stations." Even if the response times were relevant, the government's argument continues, plaintiffs were not actually required to responded within five minutes. In support of its assertion, the government presents evidence from hospital logs to prove that the plaintiffs responded, on average, in eleven minutes not five minutes. While conceding that this average includes response times for ambulance calls and maintenance calls (for which plaintiffs were held to a lesser standard) the government contends that maintenance calls were a small percentage of the total calls. In its reply brief, the government makes the assertion that plaintiffs have exaggerated the burden of responding by deceptively averaging the number of times per week they were required to respond. *See* Def.'s Reply Pl.'s Opp.Def.Mot.Sum.J. at n. 3. The government cites several weeks where there were no calls. *Id.*

## DISCUSSION

■ A party is entitled to summary judgment as a matter of law if, taking all inferences from the pleadings in the light most favorable to the opposing party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986), there is no "genuine issue as to any material fact." R.U.S.C.C. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A material fact is one that would change the outcome in litigation. *Anderson*, 477 U.S. at 247–49, 106 S.Ct. at 2510. By defendant's own admission, there is a dispute as to the length of time in which plaintiffs were required to respond to hospital calls. Def.'s

Mot.Sum.J. at 8. In addition, there are disputes concerning the extent of plaintiffs' freedom to engage in private pursuits while on call. Pl.'s Statement Genuine Issues at 2–3. Defendant acknowledges these disputes, but argues that even the shortest response time and most restrictive offsite conditions would not determine the outcome of this case because FEPA claimants must, as a matter of law, show that they were confined to a "duty station." *See* Def.'s Reply Pl.'s Opp. Def.'s Mot.Sum.J. at 2. Plaintiffs admit that they were not so confined. *See* Pl.'s Statement Genuine Issues at 2. Defendant's motion therefore hinges on the materiality of these disputed facts—(1) the length of time in which plaintiffs were required to respond as a condition of their employment, and (2) the nature and quality of the restrictions on plaintiffs private activities while they were on call.

### I.

The Federal Employees Pay Act (FEPA) section applicable to wage grade employees provides:

> [A]n employee subject to this subsection who regularly is required to remain at or within the confines of his post of duty in excess of 8 hours a day in a standby or on-call status is entitled to overtime pay ... for hours of duty ... in excess of 40 a week.

5 U.S.C. § 5544(a) (1988). Office of Personnel Management (OPM) regulations define "at or within the confines" to mean: (1) "at an employee's regular duty station," (2) "in quarters provided by an agency," or (3) "in an employee's quarters, when designated by the agency as his duty station and his activities are substantially restricted." [1] Plaintiffs contend that "severe mandatory restrictions on response time" and concomitant limitations on their freedom of movement and activities were tantamount to an order to remain "at or within the confines" of their posts of duty.

The starting point for evaluating plaintiffs' claims is *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), where the Supreme Court observed:

> Of course, an employer, if he chooses, may hire a man to do nothing ... but wait for something to happen.... Readiness to serve may be hired, quite as much as service itself.... Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent on all the circumstances of the case.

*Id.* at 133, 65 S.Ct. at 168. The critical question is whether plaintiffs were "engaged to wait" or "waited to be engaged." [2] *Skidmore v. Swift,* 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). Although *Swift* and *Armour* involved claims under the FLSA, this court has often resorted to the above analysis to resolve standby compensation claims under FEPA. *See, e.g., Savering v. United States,* 18 Cl.Ct. 704, 707 (1989); *Aldridge v. United States,* 479 F.2d 1365, 1367, 202 Ct.Cl. 365 (1973); *Detling v. United States,* 193 Ct.Cl. 125, 131 (1970). Applying the *Armour* standard, this court has found uncompensable under FEPA a wide variety of off site standby roles. *See Savering,* 18 Cl.Ct. at 709 (duty watch officer at the United States Naval Academy required to inform others of his whereabouts and return to the Academy in emergencies); *Sheets v. United States,* 2 Cl.Ct. 101, 104 (1983) (heart and lung technician required to respond to radio-pager calls and remain within a twenty-mile range); *Allen v. United States,* 1 Cl.Ct. 649, 652 (1983) (Deputy United

---

1. 5 C.F.R. 550.143(b) (1993). OPM's regulation defines "at or within the confines" for the purpose of assigning overtime pay under 5 U.S.C. § 5545(c), a provision similar, but not identical to 5 U.S.C. § 5544(a). However, the court agrees with the government that the regulation is instructive.

2. Courts have recognized at least seven factors as applicable to this determination: (1) requirement to live onsite; (2) geographical restriction; (3) frequency of calls; (4) response time; (5) ability to exchange duties with co-workers; (6) use of a pager; and (7) actual restriction of personal activities. *Owens v. Local No. 169,* 971 F.2d 347, 351 (9th Cir.1992) (collecting cases). *See also Berry v. County of Sonoma,* 763 F.Supp. 1055, 1059 (N.D.Cal.1991) (listing, in addition, (1) requirement to remain within county, (2) similarity of on-call duties to regular work, and (3) permission to transport family members while responding to calls as relevant to determination of whether employee was "engaged to wait").

States Marshal required to respond to beeper calls within a thirty-five mile radius); and *Aldridge*, 479 F.2d at 1368–69 (Canal Zone policeman required to remain accessible by telephone within a 355 square mile district). The United States District Court for the Western District of Virginia has also rejected the FLSA standby compensation claim of X-ray and laboratory technicians subject to a twenty-minute response time. *Pilkenton v. Appalachian Regional Hosp's, Inc.*, 336 F.Supp. 334, 339 (W.D.Va.1971). Although this court has acknowledged that FEPA may warrant compensation for off site standby duty when the employee's activities are "substantially limited," *Savering*, 18 Cl.Ct. at 709, this court has never in fact awarded compensation in an offsite FEPA standby claim.

Nevertheless, federal district courts and courts of appeals other than the Federal Circuit have recognized that unduly restrictive response times may lead to the inference that an employee is "engaged to wait," *see Owens v. Local No. 169*, 971 F.2d 347, 351 (9th Cir.1992); *cf. Bright v. Houston Northwest Med. Center Survivor, Inc.*, 934 F.2d 671, 678 (5th Cir.1991) (associating response time with standard for recovery under FLSA), and, as far as can be determined, no court has ever reviewed an offsite standby compensation claim under FLSA or FEPA where plaintiffs were required to respond in five minutes or less. Excluding those cases where plaintiffs were required to respond "immediately," the shortest response time considered in any FLSA or FEPA case is twenty minutes. *See Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir.1992) (rejecting FLSA offsite standby compensation claim of police detectives required to respond within twenty minutes of page); *Renfro v. City of Emporia*, 948 F.2d 1529 (10th Cir. 1991) (finding compensable FLSA offsite standby compensation claim of firefighters required to respond to pages within twenty minutes); *Pilkenton*, 336 F.Supp. at 339 (finding uncompensable FLSA offsite standby compensation claims of X–Ray and laboratory technicians subject to twenty minute response time).

Plaintiffs contend, and, on its face, their claim seems quite reasonable, that because they were required to respond within five minutes and were subject to discipline for responding late, their private lives were so restricted that they should be held to have been "engaged to wait." Thus, based upon plaintiffs factual contentions, the court might well find the time compensable under FEPA. However, in light of the absence of precedent under FEPA or FLSA for offsite standby compensation claims with response times under twenty minutes, the court is reluctant to decide this question on a motion for summary judgment.

## II.

In addition to their response time argument, plaintiffs point out that Schurz is an isolated town and that their pagers only allowed them freedom to roam within a three miles of the hospital. Moreover, the requirement to respond within a short time restricted them to an even smaller area when travelling on foot or riding a horse. Plaintiff Glazier has asserted that he could not ride his horse for fear of venturing too far away, Pl.'s Opp.Mot.Sum.J. at 2, and all plaintiffs were forced to abandon pursuits that would prevent a prompt return in clean clothes. *Id.* The government dismisses these allegations as irrelevant because plaintiffs have not shown that they were required to spend their on call time "exclusively for the benefit of the government." Def.'s Reply Pl.'s Opp.Def.'s Mot.Sum.J. at 2. While there is some precedent for the view that similarly situated FLSA defendants need not show an absence of dispute on *all* the circumstances of plaintiffs' on call life in order win on summary judgment, *Bright*, 934 F.2d at 678 (en banc) (rejecting panel's conclusion that continuous and uninterrupted on call duty is more likely to be compensable), the court does not find that true here. There is enough uncertainty about the nature and quality of plaintiffs' on call duties to require the denial of defendant's motion for summary judgment.

## CONCLUSION

The length of the response time required of plaintiffs and its effect on the nature and quality of plaintiffs' on call time are material disputes that require either a trial, a

stipulated set of facts, or some other fact finding process. Defendant's motion for summary judgment must therefore be denied. In light of the foregoing, parties are directed to file a joint status report within sixty days.

IT IS SO ORDERED.